**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

KHEIRA ZAHAF, as Legal Guardian of AHMED
FERHANI,

                              Plaintiff,

          -against-                                                                22-CV-291 (LJV)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                              Defendants.

-------------------------------------------------------------------- X


**MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**




BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiff Kheira Zahaf*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 1

STANDARD OF REVIEW ................................................................................. 3

DISCUSSION ..................................................................................................... 4

    I.     Statutes of Limitations ......................................................................... 4

         A.     New York Civil Procedure Law § 208 ......................................... 4

         B.     Equitable Tolling ........................................................................ 6

    II.    Personal Involvement ......................................................................... 9

         A.     Legal Standards ......................................................................... 10

              1.     Eighth Amendment Deliberate Indifference to a Known Risk of Suicide ........................................................................ 10

              2.     Equal Protection ................................................................. 12

          B.     Application .................................................................................. 12

              1.     Annuci ................................................................................ 12

              2.     Artus .................................................................................. 16

              3.     Eckert ................................................................................ 17

              4.     Maher ................................................................................ 19

              5.     Schiffer ............................................................................. 20

              6.     Latona ............................................................................... 21

              7.     Diebel ............................................................................... 22

    III.   Racial Discrimination – Individual Defendants ................................. 23

    IV.   Racial Discrimination – DOCCS ....................................................... 23

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Statutes**

New York Civil Procedure Law § 208 ......................................................................... 4

**United States Supreme Court**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 3, 9

*Bd. of Regents v. Tomanio*, 446 U.S. 478 (1980) ........................................................ 4

*Estelle v. Gamble*, 429 U.S. 97 (1976) .................................................................... 11

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ............................... 24, 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................. 4

**United States Court of Appeals for the Second Circuit**

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ......................... 12

*Brandon v. Kinter*, 938 F.3d 21 (2d Cir. 2019) ........................................................... 9

*Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63 (2d Cir. 2015) ...................... passim

*Carmichael v. Captain Hobbs Corr. Officer*, 371 F. App'x 155 (2d Cir. 2010) ....... 4, 5

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) .......................................................... 9

*Cooke v. United States*, 918 F.3d 77 (2d Cir. 2019) .............................................. 14, 21

*Darby v. Greenman*, 14 F.4th 124 (2d Cir. 2021) ................................................. passim

*Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) ....................................................... 11

*DiPizio v. Empire State Dev. Corp.*, 745 F. App'x 385 (2d Cir. 2018) ..................... 12

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) ................................................ 12

*Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46 (2d Cir. 2022) ........................ 3

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) ........... 4, 15, 18

*Leon v. Murphy*, 988 F.2d 303 (2d Cir. 1993) ............................................................ 4

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ................................................ 11, 12

ii

*Ortiz v. Cornetta*, 867 F.2d 146 (2d Cir. 1989) .................................................................... 7, 9

*Palmer v. Amazon.com*, Inc., 51 F.4th 491 (2d Cir. 2022) ..................................................... 4, 8

*Reynolds v. Quiros*, 990 F.3d 286 (2d Cir. 2021) ...................................................................... 12

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) ................................................................ 25

*Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021) ........................................................................... 6

*Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003) ...................................................................... 11

*Stubbs v. Dudley*, 849 F.2d 83 (2d Cir. 1988)...................................................................... 16, 17

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).............................................................. 9, 10

*Valdez ex rel. Donely v. United States*, 518 F.3d 173 (2d Cir. 2008)............................... 6, 7, 8, 9

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)...................................... 12

*Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022)........................................................... 3

*Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) ............................................ 24

## Other United States Circuit Courts of Appeals

*Abdul-Alim Amin v. Universal Life Insurance Co.*, 706 F.2d 638 (5th Cir. 1983) ........................ 7

*Arenas v. Calhoun*, 922 F.3d 616 (5th Cir. 2019)...................................................................... 11

*Collins v. Seeman*, 462 F.3d 757 (7th Cir. 2006)............................................................. 11, 12, 13

*George v. Beaver Cty.*, 32 F.4th 1246 (10th Cir. 2022)......................................................... 10, 11

*Leftwich v. Cty. of Dakota*, 9 F.4th 966 (8th Cir. 2021) ........................................................... 11

*Mullin v. Balicki*, 875 F.3d 140 (3d Cir. 2017).......................................................................... 11

*Popham v. Talladega*, 908 F.2d 1561 (11th Cir. 1990) ............................................................. 11

## United States District Courts

*Allah v. Kemp*, No. 08-CV-1008 (NAM) (GHL), 2010 U.S. Dist. LEXIS 25781 (N.D.N.Y. Feb. 25, 2010) ............................................................................................................................... 10

*James v. Monroe Cty.*, No. 20-CV-7094 (CJS), 2022 U.S. Dist. LEXIS 211669 (W.D.N.Y. Nov. 22, 2022) ............................................................................................................................... 11

*Kattu v. Metro Petroleum, Inc.*, No. 12-CV-54-A (RJA), 2013 U.S. Dist. LEXIS 110413 (W.D.N.Y. Aug. 6, 2013) ........................................................................................ 7, 9

*Kelsey v. City of New York*, No. 03-CV-5978 (JFB), 2006 U.S. Dist. LEXIS 91977 (E.D.N.Y. Dec. 18, 2006) ....................................................................................................... 10

*Lacewell v. City of N.Y.*, No. 14-CV-5952 (FB) (PK), 2016 U.S. Dist. LEXIS 79765 (E.D.N.Y. June 20, 2016) ...................................................................................................... 5, 6

*Miranda v. S. Country Cent. Sch. Dist.*, 461 F. Supp. 3d 17 (E.D.N.Y. 2020) ........................... 12

*Modica v. N.Y.C. Dep't of Educ.*, No. 20-CV-4834 (JMF), 2021 U.S. Dist. LEXIS 146041 (S.D.N.Y. Aug. 4, 2021) ........................................................................................... 7

*Phillips v. Mitchell*, No. 19-CV-0383 (TJM) (TWD), 2021 U.S. Dist. LEXIS 58834 (N.D.N.Y. Mar. 29, 2021) ...................................................................................................... 11

*Randolph v. Kalies*, No. 19-CV-1161 (DNH) (TWD), 2021 U.S. Dist. LEXIS 11322 (N.D.N.Y. Jan. 19, 2021) ....................................................................................................... 13

*Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444 (W.D.N.Y. 2020) ... 7, 9

*Stone v. Annucci*, No. 20-CV-1326 (RA), 2021 U.S. Dist. LEXIS 186195 (S.D.N.Y. Sep. 28, 2021) ....................................................................................................... 10, 15

## New York Court of Appeals

*Henry v. City of N.Y.*, 724 N.E.2d 372 (N.Y. 1999) ............................................................... 4, 5, 6

*McCarthy v. Volkswagen of Am., Inc.*, 435 N.E.2d 1072 (1982) ................................................... 5

## New York Appellate Division

*Carrasquillo v. Holliswood Hosp.*, 829 N.Y.S.2d 693 (N.Y. App. Div. 2007) ......................... 5, 6

## PRELIMINARY STATEMENT

Upon entering the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), Ahmed Ferhani had a documented history of trauma, mental illness, and suicide attempts. Nevertheless, Defendants failed to take reasonable steps to ensure Ahmed's safety. Instead, they subjected him to, and allowed him to be subjected to, recurrent physical, mental, and sexual abuse, much of it racially motivated. Ahmed gave Defendants repeated notice of the abuse and that it was driving him toward attempting suicide. Defendants, however, ignored Ahmed's pleas for help, and—on April 6, 2016—Ahmed attempted suicide by hanging, which caused him to suffer brain damage that rendered him unable to protect his legal rights or function in society.

Defendants now move to dismiss. They argue that Ahmed's claims are barred by the applicable statutes of limitations, and that Plaintiff has not adequately alleged racial discrimination or Defendants' personal involvement in the constitutional violations. Defendants are wrong on all counts. Ahmed's claims are subject to both statutory and equitable tolling because of his incapacity and because Plaintiff diligently pursued Ahmed's rights but extraordinary circumstances stood in the way. Furthermore, Plaintiff has adequately alleged racial discrimination and the personal involvement of all Defendants.

## FACTUAL BACKGROUND[1]

Ahmed Ferhani had an extremely troubled childhood, including physical and sexual abuse, and has an extensive history of mental illness, including numerous suicide attempts. (Complaint ("Compl."), Dkt. 1, ¶¶ 29–42.) Ahmed spent considerable time on Rikers Island,

---

[1] For a full recitation of the facts, Plaintiff respectfully refers the Court to Plaintiff's Complaint, Dkt. 1. For the sake of brevity, Plaintiff provides only a brief overview of the facts here. Plaintiff discusses the specific facts most relevant to this motion in the Discussion section below.

where he attempted suicide numerous more times, and his suicidal ideations and mental illnesses were thoroughly documented. (*Id.* ¶¶ 43–76.) Upon entering the care and custody of DOCCS, screenings were done by DOCCS and the Office of Mental Health, which documented his history of traumas, mental health issues, and suicide attempts. (*Id.* ¶¶ 86–106.)

In DOCCS custody, Ahmed was first housed at Green Meadow Correctional Facility, where he suffered extensive mistreatment, including corrections officers repeatedly calling him a "dirty Arab," "sand nigger," and a "terrorist" (*id.* ¶ 115), subjecting him to sexual abuse and laughing at the distress it caused him (*id.* ¶ 117), and telling him that terrorists don't belong there and shouting "White power" (*id.* ¶ 119). On August 21, 2014, Ahmed sent a letter to Defendant Anthony J. Annuci detailing that mistreatment and explaining that Ahmed was "overwhelmed" and lived in constant fear of being hurt. (*Id.* ¶ 120.)

On October 2, 2014, Ahmed sent another letter to Defendant Annuci, detailing his mistreatment at Great Meadow (*id.* ¶ 126), which now also included another officer calling Ahmed a terrorist and saying "don't blow anything up . . . or I'll blow a hole in your ass," triggering Ahmed's trauma from being a victim of sexual violence (*id.* ¶¶ 22–24).

On May 28, 2015, Ahmed was transferred to Attica. (*Id.* ¶ 169.) There, Defendant Michael J. Diebel and John Doe corrections officers continuously harassed Ahmed (*id.* ¶ 173, 194–95), including by calling him "Fucking ISIS" (*id.* ¶ 173), telling him to kill himself (*id.* at 173, 223), asking him how an ISIS member got a white girlfriend, referring to his fiancé (*id.* ¶ 174), and throwing feces and bacon into his cell (*id.* ¶ 196). Also at Attica, Defendants Steward T. Eckert and Jeffery K. Schiffer harassed Ahmed by making racist comments toward him while denying him vocational training. (*Id.* ¶¶ 180–88.) Ahmed sent a letter to Defendant Leanne Latona about those racist comments and denial of vocational training, but she did

nothing.  (*Id.* ¶ 189–90.)

In addition, on March 14, 2016, Ahmed wrote a letter, which Defendants Annuci, Eckert, Schiffer, Latona, Dale Artus, and Stephen J. Maher were made aware of on April 4, 2016.  (*Id.* ¶¶ 207, 217, 251.)  The letter detailed Ahmed's mistreatment at Attica, which included everything described above, and went on at length about the toll that the mistreatment was taking on his mental health, even stating that he would be glad to kill himself to expose the mistreatment.  (*Id.* ¶¶ 207–16.)  None of the Defendants, however, did anything.

Finally, in April 2016, Ahmed sent a letter to Defendant Artus, which stated that Ahmed had "reached both [his] emotional and psychological limit" and intended to kill himself.  (*Id.* at 224.)  Defendant Artus received that letter on April 6, 2016.  (*Id.* ¶ 225.)  That same day, Ahmed hanged himself, causing him to suffer severe brain damage and rendering him incapable of protecting his legal rights, precipitating this lawsuit.  (*Id.* ¶¶ 226–47.)

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In reviewing a motion to dismiss, courts must "accept[] the allegations in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff."  *Palmer v. Amazon.com*,

Inc., 51 F.4th 491, 503 (2d Cir. 2022). Indeed, "[t]he proper question is whether there is a permissible relevant inference from '*all* of the facts alleged, taken collectively,' not whether an inference is permissible based on 'any individual allegation, scrutinized in isolation.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

## DISCUSSION

I.    **STATUTES OF LIMITATIONS**

A.    **New York Civil Procedure Law § 208**

Defendants correctly note that all of the claims in this case are "subject to a three-year statute of limitations." (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs. Mem."), Dkt. 32-1, at 10.) Defendants, however, simply ignore the fact that, under New York Civil Procedure Law ("CPLR") § 208, the statutes of limitations applicable to Ahmed's claims have clearly and unequivocally been tolled since Defendants' misconduct rendered Ahmed unable to protect his legal rights and function in society.

Federal courts must apply state law rules for tolling statutes of limitations. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483 (1980); *Leon v. Murphy*, 988 F.2d 303, 310 (2d Cir. 1993). "CPLR 208 provides that where the 'person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues,' the Statute of Limitations is tolled for the period of disability." *Henry v. City of N.Y.*, 724 N.E.2d 372, 374 (N.Y. 1999) (alteration omitted) (quoting CPLR § 208); *see also Carmichael v. Captain Hobbs Corr. Officer*, 371 F. App'x 155, 156–57 (2d Cir. 2010) (summary order). "The New York Court of Appeals has stated that the insanity toll applies to 'individuals who are unable to protect their legal rights because of an over-all inability to function in society.'" *Carmichael*, 371 F.

App'x at 157 (quoting *McCarthy v. Volkswagen of Am., Inc.*, 435 N.E.2d 1072, 1075 (1982)). The purpose of CPLR § 208 is to protect the rights of infants and insane persons, even where a guardian may take other actions on the infant's or insane person's behalf, so that the infant or insane person is not prejudiced by the actions or inactions of a guardian. *See Henry*, 724 N.E.2d at 374 ("[A]lthough the guardian may manage the suit and protect the infant's [or insane person's] interests, it is the infant [or insane person] who is the real party to the action. Thus, it could not be justly held that rights accorded by the law to infants [or insane persons] are forfeited because a parent [or guardian] did not perform for an infant [or insane person] where performance was excused because of the infancy [or insanity]." (internal quotation marks and citations omitted)); *see also Carrasquillo v. Holliswood Hosp.*, 829 N.Y.S.2d 693, 694 (N.Y. App. Div. 2007); *Lacewell v. City of N.Y.*, No. 14-CV-5952 (FB) (PK), 2016 U.S. Dist. LEXIS 79765, at *2–3 (E.D.N.Y. June 20, 2016).

Defendants concede that Ahmed has been unable to pursue his legal rights since at least May 4, 2017, well within the statute of limitations for his claims. (*See* Defs. Mem., Dkt. 32-1, at 10.) Defendants, however, reverse the import of Ahmed's incapacity and argue that the fact that it became clear on that date that Ahmed was unable to pursue his legal rights triggered a requirement for Plaintiff to take some sort of action. (*Id.*) As *Henry* makes clear, however, the opposite is true—his incapacity suspended the requirement to act. *See Henry*, 724 N.E.2d at 374. Here and throughout their briefing, Defendants appear to erroneously believe that Ahmed's claims are somehow Plaintiff's claims. The reality, however, is that the claims in this case belong to Ahmed, *see* 6A Charles Alan Wright et al., Federal Practice and Procedure § 1548, at 373–74 (2d ed. 1990) ("A guardian . . . is a nominal party only; the ward is the real party in interest . . . ."), and the statutes of limitations on his claims have been tolled since the date he

became unable to protect his legal rights—April 6, 2016—regardless of the actions or inactions of Plaintiff, and will continue to be tolled until Plaintiff is able to protect his legal rights. *See Henry*, 724 N.E.2d at 374; *Carrasquillo*, 829 N.Y.S.2d at 694; *Lacewell*, 2016 U.S. Dist. LEXIS 79765, at *2–3. For those reasons, Defendants' motion to dismiss based on statutes of limitations should be denied.

## B. Equitable Tolling

Even if the Court does not agree that CPLR § 208 applies to the claims in this case, it would be inappropriate to dismiss Ahmed's claims at this stage of litigation. Defendants correctly anticipated that Plaintiff would assert that Ahmed's claims are subject to equitable tolling. (Defs. Mem., Dkt. 32-1, at 10.) Because Plaintiff does indeed raise that argument, and because the allegations in the Complaint do not foreclose the possibility that equitable tolling may apply, dismissing Ahmed's claims at this juncture based on the statute of limitations would be inappropriate.

"Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021).

> Significantly, however, when, as here, a plaintiff raises the defense of equitable tolling in response to a motion to dismiss on statute of limitations grounds, "the motion to dismiss should be denied unless all assertions of the complaint, as read with required liberality, *would not permit* the plaintiffs to prove that this statute was tolled."

*Modica v. N.Y.C. Dep't of Educ.*, No. 20-CV-4834 (JMF), 2021 U.S. Dist. LEXIS 146041, at

*10–11 (S.D.N.Y. Aug. 4, 2021) (emphasis added) (quoting *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 453 (W.D.N.Y. 2020)); *see also Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) ("[W]hile a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such a motion should not be granted unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of her claim which would entitle him to relief." (brackets omitted) (quoting *Abdul-Alim Amin v. Universal Life Insurance Co.*, 706 F.2d 638, 640 (5th Cir. 1983))). That is why, "[o]rdinarily, equitable tolling is an issue determined on a motion for summary judgment or at the time of trial since it is heavily fact dependent." *Kattu v. Metro Petroleum, Inc.*, No. 12-CV-54-A (RJA), 2013 U.S. Dist. LEXIS 110413, at *12–13 (W.D.N.Y. Aug. 6, 2013).

Here, the allegations in the Complaint do not foreclose Plaintiff from demonstrating that the statutes of limitations were tolled. *See Stensrud*, 507 F. Supp. 3d at 453. Indeed, they clearly permit her to prove that they were. On April 6, 2016, Ahmed suffered severe brain damage that left him vegetative and unable to communicate, protect his legal rights, or function in society. (Compl., Dkt. 1, ¶¶ 23, 238–48.) Aside from Defendants, Ahmed was the sole person in possession of the "vital information bearing on the existence of his claim[s]," and he was brain damaged and unable to communicate. *See Valdez ex rel. Donely*, 518 F.3d at 182; (Compl., Dkt. 1, ¶¶ 23, 238–48). Accordingly, Plaintiff was clearly "unable to obtain" that information despite any conceivable due diligence. *See id*. Furthermore, Plaintiff faced extreme difficulty obtaining Guardianship for Ahmed, as can reasonably be inferred from the allegations that Ahmed was not discharged from DOCCS custody until May 9, 2019 (Compl., Dkt. 1, ¶ 245), and Plaintiff was not appointed Guardian of Ahmed until November 20, 2019 (*id.* ¶ 12).[2]

---

[2] Should the Court find the allegations of Plaintiff's difficulty obtaining Guardianship

Even Defendants admit that "the injuries that [Ahmed] suffered by attempting suicide" "arguably give[] rise[] to the application of equitable tolling." (Defs. Mem., Dkt. 32-1, at 10.) Defendants attempt to counter that fact, however, by arguing that "that medical/mental impairment was suffered by [Ahmed], not [Plaintiff]." (*Id.*) That argument misses the point that Ahmed, brain damaged and uncommunicative, was the person in possession of the "vital information bearing on the existence of his claim[s]," and thus Plaintiff could not obtain that information "despite all due diligence." *Valdez ex rel. Donely*, 518 F.3d at 182.

In addition, Defendants' argument that "Plaintiff knew as of May 4, 2017, when Dr. Salvana examined [Ahmed] and reported on his condition[,] that [Ahmed] was not ever going to be able to pursue his legal rights" (Defs. Mem., Dkt. 32-1, at 10 (citing Compl., Dkt. 1, ¶ 244)) misconstrues the allegations in the Complaint. Paragraph 244 of the Complaint states that

> [a] May 4, 2017 DOCCS Physical Examination by Dr. Salvana reported that Ahmed is cortically blind, has anoxic encohalopathy, anoxic brain injury, requires 1/1 nursing assistance, incontinent of urine and stool, disartic speech, with spastic non purposeful movements. His physical limitations are listed as: "requires total assistance."

(Compl., Dkt. 1, ¶ 244.) That paragraph does not allege that Ahmed "was not ever going to be able to pursue his legal rights," nor that "Plaintiff knew" at that time that Ahmed would never be able to pursue his legal rights. Defendants' framing of that allegation asks this Court to draw all reasonable inferences against Plaintiff, the exact opposite of the standard that the Court must apply at this stage of litigation. *See Palmer*, 51 F.4th at 503 (on a motion to dismiss, the Court must draw all reasonable inference in plaintiff's favor). In reality, after Dr. Salvana's examination, Plaintiff and the rest of Ahmed's family still presumed that Ahmed would get better, and Plaintiff is prepared to seek leave to amend the Complaint to add those facts, should

insufficient and dispositive, Plaintiff respectfully requests leave to amend.

the Court deem them necessary.

It cannot be said that "all assertions of the [C]omplaint, as read with required liberality, would not permit [P]laintiff[] to prove that the statute [of limitations] was tolled." *Stensrud*, 507 F. Supp. 3d at 453. To the contrary, the allegations in the Complaint, with all reasonable inferences drawn in Plaintiff's favor, would permit Plaintiff to prove that Plaintiff was "unable to obtain vital information bearing on the existence of [Ahmed's] claim[s]" "despite all due diligence." *Valdez ex rel. Donely*, 518 F.3d at 182. Accordingly, it would be inappropriate to dismiss Ahmed's claims based on the statutes of limitations at this stage of litigation. *Ortiz*, 867 F.2d at 148; *Stensrud*, 507 F. Supp. 3d at 453; *Kattu*, 2013 U.S. Dist. LEXIS 110413, at *12–13.

## II.     PERSONAL INVOLVEMENT

Defendants argue that Plaintiff has not adequately alleged the personal involvement of any of the Defendants in his Eight Amendment cruel and unusual punishment or Fourteenth Amendment equal protection claims. Defendants are incorrect.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019). Defendants cite *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), for the various ways that a plaintiff can establish personal involvement. (Defs. Mem., Dkt. 32-1, at 11.) *Colon*, however, has largely been overruled. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). There is no longer a "special rule for supervisory liability." *Id.* Instead, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).[3]

---

[3] For this reason, Plaintiff voluntarily dismisses his Second Claim for Relief. However,

"The factors necessary to establish a § 1983 violation will vary," however, "with the constitutional provision at issue because the elements of different constitutional violations vary." *Id.* Here, Plaintiff has adequately pleaded the personal involvement of each of Defendant under the constitutional provisions alleged.

## A. Legal Standards

### 1. Eighth Amendment Deliberate Indifference to a Known Risk of Suicide

"Courts treat jail-suicide claims as a failure to provide medical care, which implicates the Eighth Amendment." *George v. Beaver Cty.*, 32 F.4th 1246, 1255 (10th Cir. 2022) (internal citation omitted).[4] "[A] prisoner claiming a denial of adequate medical care in violation of the

---

Plaintiff intends to seek leave to amend to add a claim of policymaker liability against Defendants Annucci, Artus, Eckert, Schiffer, Latona, and Maher. As courts have explained, although the fourth and fifth *Colon* factors are no longer viable theories of supervisory liability, the third factor—or "policymaker liability"—is, and "a senior prison official can still be held liable for his [or her] role in creating a policy by which violations of the Eighth Amendment occurred." *Stone v. Annucci*, No. 20-CV-1326 (RA), 2021 U.S. Dist. LEXIS 186195, at *27–29, 33 (S.D.N.Y. Sep. 28, 2021) (collecting cases). Such liability can be demonstrated through (1) reports that defendants were likely aware of reports documenting that policies were inadequate, (2) steps taken by other states or local correctional systems to address similar inadequate policies, and (3) other lawsuits against the defendants for similar claims. *Id.* at *37–38. Such facts can "put the Supervisory Defendants on notice that existing policies were deficient." *Id.* (ellipsis omitted). Here, Plaintiff is in the process of gathering such facts and will move to amend when such facts can be added to the Complaint in good faith.

[4] Defendants rely on half of a sentence from a report and recommendation, which they cite as a decision and order, to assert that, when risk of suicide claims involve non-medical personnel, they should be analyzed as failure to protect claims. (Def. Mem., Dkt. 32-1, at 12 quoting *Allah v. Kemp*, No. 08-CV-1008 (NAM) (GHL), 2010 U.S. Dist. LEXIS 25781, at *11 (N.D.N.Y. Feb. 25, 2010), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 25714 (N.D.N.Y. Mar. 18, 2010)). The *Allah* report and recommendation cites no sources for the proposition that suicide claims against non-medical personnel should be analyzed as failure to protect claims, and the second half of the sentence asserting that proposition goes on to say that "the bulk of cases dealing with the right of a person in custody for protection from suicide analyze the issue as an Eighth Amendment claim dealing with the inadequate provision of medical care." *Id.* (brackets omitted) (quoting *Kelsey v. City of New York*, No. 03-CV-5978 (JFB), 2006 U.S. Dist. LEXIS 91977, at *4 n. 5 (E.D.N.Y. Dec. 18, 2006), *aff'd*, 306 Fed. Appx. 700 (2d Cir. 2009). The report and recommendation then proceeds to analyze the claim as one of

Eighth Amendment must allege and ultimately prove that prison officials acted with deliberate indifference to a serious medical need." *McKenna v. Wright*, 386 F.3d 432, 436–37 (2d Cir. 2004).  A deliberate indifference claim requires a showing of both objective and subjective elements.  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).  Objectively, a plaintiff "must allege that he was denied treatment for an objectively 'serious medical condition.'" *Darby v. Greenman*, 14 F.4th 124, 132 (2d Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "'A serious medical condition' is one that poses 'an unreasonable risk of serious damage' to an inmate's health." *Id.* at 132–33 (quoting *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017)).  Subjectively, a defendant must have been "aware of and consciously disregarded a

---

failure to provide medical care, dismissing the defendant's contrary request as an attempt "to invoke the higher standard of scrutiny applicable to 'failure to protect' claims." *Id.*

The only other support that Plaintiff can find for Defendant's position are district court cases that also quote only the uncited first half of the above sentence from the *Allah* report and recommendation, and cite it as if it is a decision and order. *See, e.g.*, *James v. Monroe Cty.*, No. 20-CV-7094 (CJS), 2022 U.S. Dist. LEXIS 211669, at *29 (W.D.N.Y. Nov. 22, 2022); *Phillips v. Mitchell*, No. 19-CV-0383 (TJM) (TWD), 2021 U.S. Dist. LEXIS 58834, at *9 (N.D.N.Y. Mar. 29, 2021).  As far as Plaintiff can tell, every Circuit Court to articulate suicide claims as either failure to protect or failure to provide medical care claims squarely frames them as medical care claims, even in cases where the defendants were non-medical personnel. *See, e.g.*, *George*, 32 F.4th at 1255; *Leftwich v. Cty. of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021) ("In a jail suicide case, municipal officials violate the Eighth Amendment prohibition on cruel and unusual punishment if they are deliberately indifferent to serious medical needs, including the risk of suicide."); *Arenas v. Calhoun*, 922 F.3d 616, 621 (5th Cir. 2019) ("Suicide is an objectively serious harm implicating the state's duty to provide adequate medical care."); *Mullin v. Balicki*, 875 F.3d 140, 158–59 (3d Cir. 2017) ("A vulnerability-to-suicide claim, . . . is simply a more specific articulation of the Eighth Amendment rule that prison officials must not be deliberately indifferent to a prisoner's serious medical needs . . . ."); *Popham v. Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990) ("[J]ail suicides are analogous to the failure to provide medical care . . . .").

Plaintiff's counsel is not aware of any Second Circuit case distinguishing between failure to protect and failure to provide medical care in the suicide context, let alone applying a higher standard for claims against non-medical personnel.  Accordingly, the Court should not apply any "higher standard of scrutiny" that may be applicable to failure to protect claims.

substantial risk of serious harm." *Id.* at 132.[5]

## 2. Equal Protection

"To state a discrimination claim under the Fourteenth Amendment Equal Protection Clause . . ., plaintiffs must sufficiently allege that defendants acted with discriminatory intent." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015). "A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *DiPizio v. Empire State Dev. Corp.*, 745 F. App'x 385, 390 (2d Cir. 2018) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).[6] In the prison context, the discrimination may survive judicial scrutiny if it is "reasonably related to any legitimate penological interests." *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021).[7]

## B. Application

## 1. Annuci

Plaintiff asserts a single claim against Defendant Annuci for deliberate indifference to a

---

[5] Some Circuits have articulated more specific standards to apply in suicide or attempted suicide cases, *see, e.g.*, *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006), but those largely mirror the deliberate indifference standards, simply inserting "suicide or attempted suicide" for "serious medical condition" and/or "serious harm." *See id.* Plaintiff sees no legal basis for applying a more specific standard not adopted by the Second Circuit, as Defendants have done (*see* Def. Mem., Dkt. 32-1, at 12).

[6] In *Vega*, that language is used to discuss Title VII. However, "[o]nce action under color of state law is established, [a plaintiff's] equal protection claim parallels his Title VII claim." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

[7] Defendants incorrectly assert that "a plaintiff must identify a similarly situated comparator, and show that he was treated differently than that comparator." (Defs. Mem., Dkt. 32-1, at 13.) Identifying a comparator is one of several ways of "establishing an inference of discriminatory intent." *Miranda v. S. Country Cent. Sch. Dist.*, 461 F. Supp. 3d 17, 23 (E.D.N.Y. 2020) (Cogan, J.) (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)). But in a case "where plaintiff has alleged direct evidence of discriminatory intent," such as this one, "[n]o comparators are needed." *Id.*

known risk of suicide. Plaintiff has adequately alleged that Defendant Annuci acted with deliberate indifference to Ahmed's serious medical need. *See McKenna*, 386 F.3d at 436–37. Defendant does not argue that the objective element is not met.[8] The subjective element is also met because Plaintiff has adequately alleged that Defendant Annuci was "aware of and consciously disregarded a substantial risk of serious harm." *See Darby*, 14 F.4th at 132. Plaintiff alleges with specificity that Ahmed mailed at least three letters directly to Defendant Annuci while in DOCCS custody that detailed the substantial risk of serious harm that he faced.[9] (Compl., Dkt. 1, ¶¶ 120, 126, 205.)

The first letter, sent on August 21, 2014, "advise[d] [Annuci] of [Ahmed's] mistreatment." (Compl., Dkt. 1, ¶ 120.) That mistreatment included racist and physically threatening comments made by guards (*id.* ¶ 115, 119) and sexual assault and harassment by guards who laughed at him while he was in distress (*id.* ¶ 117). Ahmed further advised Annuci that he was overwhelmed by the constant abuse by guards and lived in fear of being hurt. (*Id.* ¶ 120.) Drawing all reasonable inference in Plaintiff's favor, such a letter—particularly from a

_____

[8] Indeed, that element is met as to all Defendants because Plaintiff has alleged that he was denied treatment for a serious medical condition. *See Darby*, 14 F.4th at 132. Plaintiff has alleged that Ahmed suffered from severe mental health conditions (including depression), repeatedly attempted suicide, and had ongoing suicidal ideation. (Compl., Dkt. 1, ¶ 34–36, 39–43, 45–46, 60, 63, 65–70, 72, 74–76, 78, 86, 89, 92–105, 120, 126–27, 150–52.) That condition clearly posed "an unreasonable risk of serious damage to [Ahmed's] health," and was thus "serious." *Darby* , 14 F.4th at 132; *Collins*, 462 F.3d at 760 ("In prison suicide cases, the objective element is met by virtue of the suicide itself, as it goes without saying that suicide is a serious harm." (internal quotation marks and brackets omitted)); *Randolph v. Kalies*, No. 19-CV-1161 (DNH) (TWD), 2021 U.S. Dist. LEXIS 11322, at *10 (N.D.N.Y. Jan. 19, 2021) ("Cases from within this circuit have observed that mental disorders can represent serious medical needs, particularly when those disorders are accompanied by suicidal ideations and attempts." (collecting cases)).

[9] Defendants assert that the only allegation that could indicate that Defendant Annuci was personally aware of Ahmed's serious medical need was the fact that he was sent a copy of Ahmed's March 14, 2016 letter. (Defs. Mem., Dkt. 32-1, at 13–14.) That is simply incorrect.

prisoner with as extensive a history of mental illness and attempted suicide as Ahmed—would make Annuci aware that Ahmed faced "a substantial risk of serious harm." *See Darby*, 14 F.4th at 132.

Similarly, Defendant's second letter mailed directly to Defendant Annuci, sent on October 2, 2014, "complain[ed] about his treatment at Great Meadow" (Compl., Dkt. 1, ¶ 126), which involved the same mistreatment detailed above, plus additional mistreatment by another officer who made racist comments and threats of sexual violence against Ahmed, triggering Ahmed's trauma from being a victim of sexual abuse. (*Id.* ¶ 122–24.) In the letter, Ahmed stated that his main intention in complaining about his treatment was to ensure his safety and wellbeing so that he could "continue to remain alive and productive until [his] release." (*Id.* ¶ 127.) A clear reasonable inference from that letter is that Ahmed's mistreatment was causing him trauma and placing him at "a substantial risk of serious harm." *See Darby*, 14 F.4th at 132.

Finally, the third letter, mailed on or about March 14, 2016, and sent directly to Defendant Annuci, described the extensive mistreatment that Ahmed had suffered at Attica. (Compl., Dkt. 1, ¶¶ 206–07.) That included guards making racist comments and threats, encouraging Ahmed to kill himself, and throwing feces and bacon into Ahmed's cell. (*Id.* ¶¶ 173, 196.) Ahmed's letter went on at length about the toll that the mistreatment was taking on his mental health, even stating that he would be glad to kill himself to expose the mistreatment. (*Id.* ¶¶ 207–16.) Clearly, such a letter would put any reasonable person on notice that Ahmed was at "a substantial risk of serious harm." *See Darby*, 14 F.4th at 132.

Defendant Annuci is presumed to have received all three of those letters, *Cooke v. United States*, 918 F.3d 77, 78 (2d Cir. 2019) (there is a rebuttable presumption "that a properly addressed and mailed letter will be delivered in the usual course"), and Defendant Annuci took

no action in response to any of them.  Accordingly, Plaintiff has plausibly alleged that Defendant

Annuci was "aware of and consciously disregarded a substantial risk of serious harm" to Ahmed,

and thus violated Ahmed's Eighth Amendment right against cruel and unusual punishment,

*Darby*, 14 F.4th at 132.

Defendants cite several unpublished district court cases for the proposition that receipt of

letters and grievances are insufficient as a matter of law to establish personal involvement.

(Defs. Mem., Dkt. 32-1, at 14.)  All but one of those cases, however, were decided on summary

judgment.  (*See id.*)  At the summary judgment stage, a plaintiff needs some evidence of a

defendant's subjective knowledge,

> [b]ut at the pleadings stage, courts recognize the common-sense
> principle that a plaintiff will often not be equipped to come
> forward with direct evidence of a defendant's subjective or actual
> knowledge or his intent.  As the Second Circuit noted earlier this
> year, "A complaint is allowed to contain general allegations as to a
> defendant's knowledge, because a plaintiff realistically cannot be
> expected to plead a defendant's actual state of mind."

*Stone v. Annucci*, No. 20-CV-1326 (RA), 2021 U.S. Dist. LEXIS 186195, at *35 (S.D.N.Y. Sep.

28, 2021) (quoting *Kaplan*, 999 F.3d at 864).  Accordingly, "[a]t the motion to dismiss stage, a

plaintiff is required only 'to include allegations of the facts or events they claim give rise to an

inference of knowledge.'"  *Id.* (quoting *Kaplan*, 99 F.3d at 864).

In addition, the cases cited by Defendants do not discuss why the letters were insufficient

to establish that they put the receivers on notice that the writers were at a substantial risk of

serious harm.  Here, all three letters clearly document that Ahmed was at a substantial risk of

serious harm.  It cannot be that, after *Iqbal*, allegations that multiple letters mailed directly to a

defendant—each satisfying every element of a deliberate indifference claim—simply cannot

plausibly allege personal involvement.  Plaintiff's counsel is aware of no binding precedent

stating that letters mailed to defendants are, as a matter of law, either sufficient or insufficient to

establish personal involvement for purposes of a motion to dismiss. What matters is if the letters and surrounding facts are sufficient to plausibly allege the elements of a deliberate indifference claim. Here, they plainly are.

Similarly, Defendants' argument that "the DOCCS Commissioner overseas an agency charged with the care and custody of approximately 34,000 inmates" (Defs. Mem., Dkt. 32-1, at 14), and thus cannot be expected to intervene to protect one, is also unavailing. By that logic, the DOCCS Commissioner would never be under any obligation to protect the health and wellbeing of any person placed under his care and custody. Clearly, no binding precedent stands for that proposition.

Finally, Defendants' argue that Annuci did not receive the March 14, 2016 letter until two days before Ahmed's suicide attempt, and thus did not have time to assess the threat and act. (Defs. Mem., Dkt 32-1, at 14.) That argument fails for two reasons. First, as discussed above, Defendant Annuci received two prior letters. Second, whether two days was adequate time to assess the threat to Ahmed and act is an issue for the finder of fact, not a legal question to be resolved on a motion to dismiss. Indeed, even in the case cited by Defendants (Defs. Mem., Dkt. 32-1, at 14 (quoting *Stubbs v. Dudley*, 849 F.2d 83, 86 (2d Cir. 1988)), a jury decided that one officer had time to act and another did not—based on a careful parsing of the trial record—and the Second Circuit merely affirmed those verdicts, *Stubbs* , 849 F.2d at 86.

For all of the reasons explained above, Plaintiff has plausibly alleged an Eighth Amendment claim against Defendant Annuci.

### 2. Artus

Plaintiff asserts a single claim against Defendant Artus for deliberate indifference to a known risk of suicide. As to Defendant Artus, the subjective element of this claim is met because Artus received the March 14, 2016 letter (Compl., Dkt. 1, ¶ 217), and the April 2016

letter from Ahmed received on the day of Ahmed's death (*id.* ¶ 224). As discussed above, the March 14, 2016 letter was more than sufficient to put any reasonable person on notice that Ahmed was at "a substantial risk of serious harm" and sustain an Eighth Amendment claim. *See Darby*, 14 F.4th at 132.

In addition, the April 2016 letter, which was sent directly to Defendant Artus, was even more explicit about Ahmed's serious medical need. (Compl., Dkt. 1, ¶ 224.) The letter stated that Ahmed had "reached both [his] emotional and psychological limit" and intended to kill himself. (*Id.*) Defendant Artus received that letter on April 6, 2016. (*Id.* ¶ 225.) Defendant Artus took no action. Ahmed hanged himself that day. (*Id.* ¶ 226.) Whether Defendant Artus had time to read the letter, assess the risk, and respond, is a factual issue. As *Stubbs* indicates, that issue can be an extremely fact-intensive inquiry. 849 F.2d at 86. At this stage, Defendant Artus's receipt of that letter, in addition to the March 14, 2016 letter, is sufficient to plausibly allege that Defendant Artus was "aware of and consciously disregarded a substantial risk of serious harm," and thus violated Ahmed's Eighth Amendment right against cruel and unusual punishment. *Darby*, 14 F.4th at 132.

### 3. Eckert

#### a. Deliberate Indifference

Plaintiff brings a claim against Defendant Eckert for deliberate indifference to a known risk of suicide. As to Defendant Eckert, the subjective element of this claim is met because Eckert was made aware of the March 14, 2016 letter (Compl., Dkt. 1, ¶ 217), instructed Defendant Schiffer to keep Ahmed "idle" (*id.* ¶¶ 183–84), and received an additional letter about Ahmed's treatment on A Block (*id.* ¶¶ 197–201).

The reasons that the March 14, 2016 letter placed Defendant Eckert on notice that Ahmed was at "a substantial risk of serious harm," *see Darby*, 14 F.4th at 132, are the same as to the

other Defendants explained above. Defendants do not acknowledge Plaintiff's allegations about Defendant Eckert's order to keep Ahmed "idle" (*see* Defs. Mem., Dkt. 32-1, at 16–17), but Plaintiff alleges that Defendant Eckert was aware of Ahmed's suicidal ideations (Compl., Dkt. 1, ¶ 183), knew that frustrations to Ahmed's attempts to be future-oriented triggered Ahmed's suicidality (*id.*), and nevertheless denied Ahmed's request for vocational training and instructed Defendant Schiffer to keep Ahmed "idle" (*id* ¶¶ 183–84). That episode clearly demonstrates that Defendant Eckert was "aware of and consciously disregarded a substantial risk of serious harm." *Darby*, 14 F.4th at 132.

In addition, Ahmed sent a letter directly to Defendant Eckert about his mistreatment in A Block. (*Id.* ¶¶ 197–201.) That mistreatment included guards harassing, threatening, and intimidating Ahmed, including by throwing feces and bacon into Ahmed's cell. (*Id.* ¶¶ 194–96.) Defendant Eckert knew of Ahmed's suicidal ideations and that harassment and bullying by guards were significant risk factors for his suicidality, yet did not take any action. (*Id.* ¶¶ 198–99.) That again demonstrates that Defendant Eckert was "aware of and consciously disregarded a substantial risk of serious harm." *Darby*, 14 F.4th at 132. For all of those reasons, Plaintiff has adequately alleged an Eighth Amendment claim against Defendant Eckert.

### b. Equal Protection

Plaintiff also brings a § 1983 equal protection claim against Defendant Eckert. Plaintiff's allegations plausibly allege that Defendant Eckert "acted with discriminatory intent" in denying Ahmed vocational training, which deprived him of his Eighth Amendment rights, as described above. *Burgis*, 798 F.3d at 68.

In considering Plaintiff's Complaint, the Court must consider all of the facts alleged, taken together, and draw all reasonable inferences from those facts, considered collectively, in Plaintiff's favor. *Kaplan*, 999 F.3d at 854. Here, in a conversation that occurred in front of

Ahmed, Defendants Eckert and Schiffer laughed and made "jokes" at Ahmed's expense before Eckert ultimately ordered Schiffer to keep Ahmed "idle." (Compl., Dkt. 1, ¶¶ 182–84.) That conversation immediately followed Defendant Schiffer harassing Ahmed by asking him why he wanted to be a Muslim and starve himself instead of receiving presents for Christmas, and by denying him vocational training because he didn't want Ahmed to "make a bomb." (*Id.* ¶ 180–81.) It is a reasonable inference that those comments were racially discriminatory, and thus that the "jokes" subsequently made by Eckert and Schiffer were racially discriminatory.[10] Those racist comments were made during the same conversation in which Eckert ordered Schiffer to keep Ahmed "idle." (*Id.* ¶¶ 182–84.) Plaintiff has thus adequately alleged that Eckert "acted with discriminatory intent" in denying Ahmed vocational training, *Burgis*, 798 F.3d at 68, and thus violated Ahmed's Fourteenth Amendment right to equal protection.

### 4. Maher

Plaintiff asserts a single claim against Defendant Maher for deliberate indifference to a known risk of suicide. Defendants argue that the only allegations about Maher's personal

---

[10] Defendants' argument that Plaintiff's race is not clear from the Complaint (Defs. Mem., Dkt. 32-1, at 19), once again asks this Court to ignore the clear inference to be drawn from the allegations. Plaintiff alleges that Ahmed was born in Algeria (Compl., Dkt. 1, ¶ 24), was a Muslim (*id.* ¶ 29), was teased for not being able to speak English (*id.*), was called a "dirty Arab," "sand nigger," and a "terrorist" (*id.* ¶ 115), was verbally assaulted with the words "White power" (*id.* ¶ 119), was called "fucking ISIS" and asked how an ISIS member got a white girlfriend (*id.* ¶¶ 173–74), was repeatedly called a terrorist (*id.* ¶¶ 122–24), and was harassed by having bacon throw in his cell (*id.* ¶ 196). The clear inference to be drawn from those allegations, taken together, is that Ahmed is Arab, which he is.

Further, Defendants cite Wikipedia for the proposition that, being from Algeria, Ahmed is "likely of Arab or Berber descent." (Defs. Mem., Dkt. 32-1, at 19.) Should Defendants have run a more specific Wikipedia search, they would have learned that it is public information that Ahmed is an "Arab-Muslim immigrant[]." *See 2011 Manhattan Terrorism Plot*, Wikipedia, https://en.wikipedia.org/wiki/2011_Manhattan_terrorism_plot (last visited Dec. 8, 2022). Should the Court determine that Ahmed's race is not a reasonable inferable from the Complaint or judicially noticeable, Plaintiff will seek leave to amend on this point.

involvement are paragraphs 17 and 120 (Defs. Mem., Dkt. 1, at 16–17), neither of which are applicable.  Defendants ignore, however, that Defendant Maher is also alleged to have received a copy of the March 14, 2016 letter.  (Compl., Dkt. 1, ¶ 251.)  The reasons that the March 14, 2016 letter placed Defendant Maher on notice that Ahmed was at "a substantial risk of serious harm," *see Darby*, 14 F.4th at 132, are explained above.  Despite that notice, Defendant Maher took no action.  Accordingly, Plaintiff has adequately alleged an Eighth Amendment claim against Defendant Eckert.

### 5.  Schiffer

#### a.  Deliberate Indifference

Plaintiff brings a claim against Defendant Schiffer for deliberate indifference to a known risk of suicide.  As to Defendant Schiffer, the subjective element is met because Schiffer was made aware of the March 14, 2016 letter and did nothing (Compl., Dkt. 1, ¶ 217), and because he denied Ahmed's request for vocational training (*id.* ¶¶ 180–88).

The reasons that the March 14, 2016 letter placed Defendant Schiffer on notice that Ahmed was at "a substantial risk of serious harm," *see Darby*, 14 F.4th at 132, are the same as to the other Defendants explained above.  With respect to Ahmed's request for vocation training, Defendant Schiffer knew that Ahmed had suicidal ideations and that frustration with his attempts to work towards his goals of supporting himself and his family after release were significant factors that triggered his suicidality.  (Compl., Dkt. 1, ¶ 180.)  Nevertheless, Defendant Schiffer responded to Ahmed's request by saying that he could not help Ahmed obtain vocational training because he did not want Ahmed to "make a bomb."  (*Id.*)  Schiffer further made jokes at Ahmed's expense (*id.* ¶¶ 181–82), then assigned Ahmed to lithograph training because that would not help Ahmed achieve his goal of supporting his family after release and thus increased his suicidality (*id.* ¶¶ 187–88).  For all of those reasons, Plaintiff has adequately alleged that

Defendant Schaffer was "aware of and consciously disregarded a substantial risk of serious harm" to Ahmed, *Darby*, 14 F.4th at 132, and thus violated Ahmed's Eighth Amendment rights.

### b. Equal Protection

Plaintiff also brings a § 1983 equal protection claim against Defendant Schiffer. Plaintiff's Complaint plausibly alleges that Defendant Schiffer "acted with discriminatory intent" in denying Ahmed vocational training, which deprived him of his Eighth Amendment rights, as described above. *Burgis*, 798 F.3d at 68. When Defendant Schiffer denied Ahmed's request, he told him that the did not want Ahmed to "make a bomb," and, in the same conversation, asked him why he wanted to be a Muslim and starve himself when he could be a Christian and get presents for Christmas. (Compl., Dkt. 1, ¶ 181.) It is reasonable to infer that those remarks were racist. Furthermore, the fact that Schiffer made those racist remarks while denying Ahmed vocational training make it reasonable to infer that Schiffer "acted with discriminatory intent" in denying Ahmed vocational training, and thus Plaintiff has adequately alleged that Schiffer violated Plaintiff's Fourteenth Amendment equal protection rights. *See Burgis*, 798 F.3d at 68.

### 6. Latona

Plaintiff asserts a single claim against Defendant Latona for deliberate indifference to a known risk of suicide. As to Defendant Latona, the subjective element is met because she was made aware of the March 14, 2016 letter (Compl., Dkt. 1, ¶ 217), and of Ahmed's denied request for vocational training (*id.* ¶¶ 189–90), and took no action. The reasons that the March 14, 2016 letter placed Defendant Latona on notice that Ahmed was at "a substantial risk of serious harm," *see Darby*, 14 F.4th at 132, are the same as to the other Defendants explained above. With respect to Ahmed's denied request for vocational training, Ahmed wrote Latona a letter informing her of all of the facts about that denial outlined above. (Compl., Dkt. 1, ¶¶ 189–90.) Defendant Latona is presumed to have received that letter, *Cooke*, 918 F.3d at 78, and yet

took no action.  For all of those reasons, Plaintiff has adequately alleged that Defendant Latona was "aware of and consciously disregarded a substantial risk of serious harm" to Ahmed, *Darby*, 14 F.4th at 132, and thus violated Ahmed's Eighth Amendment rights.

### 7.  Diebel

#### a.  Deliberate Indifference

Plaintiff brings a claim against Defendant Diebel for deliberate indifference to a known risk of suicide.  Defendants' minimization of Diebel's involvement to a single allegation displays either a shocking unfamiliarity with—or gross mischaracterization of--the Complaint.  (*See* Defs. Mem., Dkt. 32-1, at 18.)  Diebel, along with John Does 1–3, is the Defendant who is alleged to have had the most direct interactions with Ahmed.  (*See, e.g.*, Compl., Dkt. 1, ¶¶ 173–74, 194–96, 223).  Given Ahmed's extensive history of mental health issues and suicide attempts, ongoing through the allegations in the Complaint, it is thus a reasonable inference that Diebel was aware of the "substantial risk of serious harm" that Ahmed faced.  *See Darby*, 14 F.4th at 132.  That is further confirmed by the fact that Diebel repeatedly encouraged Ahmed to kill himself.  (Compl., Dkt. 1, ¶¶ 173, 223.)  A reasonable inference from those allegations is that Diebel knew Ahmed had suicidal ideations.  Furthermore, those allegations demonstrate that Diebel did not just "consciously disregard" the substantial risk that Ahmed may attempt suicide, *see Darby*, 14 F.4th at 132, but actively encouraged him to do so—once in the final two days of Ahmed's life (*see* Compl., Dkt. 1, ¶¶ 173, 223).  Diebel also harassed, threatened, and intimidated Ahmed, including by throwing feces and bacon into Ahmed's cell (*id.* ¶¶ 194–96), which any reasonable person would know would increase a suicidal prisoner's suicidality.  For all of the above reasons, Plaintiff has plausibly alleged that Diebel was "aware of and consciously disregarded a substantial risk of serious harm" to Ahmed, *Darby*, 14 F.4th at 132, and thus violated his Eighth Amendment rights.

### b. Equal Protection

Although Defendants do not acknowledge it (*see* Defs. Mem., Dkt. 32-1, at 18), Plaintiff also brings a § 1983 equal protection claim against Defendant Diebel. Plaintiff plausibly alleges that Diebel "acted with discriminatory intent" in his harassment of Ahmed, which deprived Ahmed of his Eighth Amendment rights, as described above. *Burgis*, 798 F.3d at 68. As noted, the clear inference from the Complaint is that Ahmed is Arab (*see supra* n.10), and Diebel's harassment of Ahmed included calling him "Fucking ISIS" (Compl., Dkt. 1, ¶ 173) and throwing bacon into his cell (*id.* ¶ 196). It is reasonable to infer that those remarks and actions were racist. Furthermore, the fact that the very acts of harassment were racist demonstrate that Diebel "acted with discriminatory intent" when harassing Ahmed, and thus Plaintiff has adequately alleged a Fourteenth Amendment claim against Diebel. *See Burgis*, 798 F.3d at 68.

## III.    RACIAL DISCRIMINATION – INDIVIDUAL DEFENDANTS

Defendants move to dismiss Plaintiff's third and fourth Claims for Relief (§ 1981 Violation of Equal Rights and § 1983 Violation of Equal Protection, respectively). (Defs. Mem., Dkt. 32-1, at 18–19.) First, Defendants argue that Ahmed's race is not clear from the Complaint. (*See id.* at 19.) That is incorrect. (*See supra* n.10.) Defendants only other argument is that "Plaintiff's Complaint fails to allege facts supporting [Ahmed's] claim that Defendants conduct was motivated by his race." (Defs. Mem., Dkt. 32-1, at 19.) As Plaintiff explained above with respect to every individual Defendant against which Plaintiff is bringing a racial discrimination claim, that is simply incorrect. Defendant has adequately alleged racial discrimination by all of the Defendants against whom Plaintiff is bringing a § 1981 or § 1983 equal protection claim, as explained in detail above.

## IV.    RACIAL DISCRIMINATION – DOCCS

Defendants move to dismiss Plaintiff's fifth Claim for Relief, a Title VI claim against

Defendant DOCCS.  Defendants cite *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998), and *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 n.9 (2d Cir. 2012), for the proposition that, in Title VI claims, "a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond."  (Defs. Mem., Dkt. 32-1, at 20 (quoting *Gebser*, 524 U.S. at 290).)  Defendants assert that "Plaintiff has failed to plausibly allege facts suggesting that any of the supervisory Defendants were aware of racially discriminatory treatment of [Ahmed] while he was at Attica, let alone that they failed to adequately respond to it."  (*Id.* at 20.)

That assertion is simply incorrect, as discussed above.  For example, Defendant Annuci, received Ahmed's August 21, 2014 letter, "advise[ing] [Annuci] of [Ahmed's] mistreatment" (Compl., Dkt. 1, ¶ 120), which included corrections officers repeatedly referring to Ahmed as a "dirty Arab," "sand nigger," and a "terrorist" (*id.* ¶ 115), and did nothing.  Defendant Annuci also received the October 2, 2014 letter, complaining about Ahmed's treatment at Great Meadows (*id.* ¶ 126), which included a corrections officer calling Ahmed a terrorist and making a sexual threat against Ahmed (*id.* ¶ 124), and yet Annuci did nothing.  Defendants Annuci, Artus, Eckert, Maher, Schiffer, and Latona all became aware of the March 14, 2016 letter, describing the mistreatment Ahmed suffered at Attica (*id.* ¶¶ 217, 251), which included Ahmed being called "Fucking ISIS" (*id.* ¶ 173), being asked how an ISIS member got a white girl (*id.* ¶ 174), having racist comments made while Ahmed was being denied vocational training (*id.* ¶¶ 180–88), and having bacon thrown into his cell (*id.* ¶ 196), yet Defendants did nothing.  Defendants Eckert and Schiffer also directly partook in the discrimination involved in denying Ahmed vocational training.  (*Id.* ¶¶ 180–88.)  In addition, Defendant Latona received a letter

24

about that discrimination (*id.* ¶¶ 189–90), and Defendant Eckert received a letter about guards harassing, threatening, and intimidating Ahmed, including by throwing feces and bacon into Ahmed's cell (*id.* ¶¶ 194–201), and neither took any action.

All of those Defendants are presumed to have received those letters, *Cooke*, 918 F.3d at 78, all of them had authority to "institute corrective measures," *Gebser*, 524 U.S. at 290; (Compl., Dkt. 1, ¶¶ 14–20), and yet all of them failed to do so. Accordingly, Plaintiff has adequately alleged a Title VI damages claim. *See Gebser*, 524 U.S. at 290.

**CONCLUSION**

For the reasons explained above, Defendants' motion to dismiss should be denied in its entirety. Should the Court perceive deficiencies with respect to any of the claims, Plaintiff requests the opportunity to amend the Complaint to amplify the allegations. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.") (internal quotation marks and citation omitted). Finally, Plaintiff respectfully requests oral argument on the present motion.

Dated: December 8, 2022
      New York, New York

Respectfully submitted,

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Fl.
New York, New York 10016
(212) 490-0400

By: _____
      Keegan Stephan
      Marc Cannan
      *Attorneys for Plaintiff Kheira Zahaf*